UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JOE D. THOMPSON,             )
                              )
         Plaintiff,        )
                              )
                              )
v.                         )     3:06-CV-108
                              )     (VARLAN/SHIRLEY)
                              )
MICHAEL J. ASTRUE,[1]      )
Commissioner of Social Security,   )
                              )
         Defendant.     )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding the disposition by the District Court of the plaintiff's motion for summary judgment [Doc.

13] and the defendant's motion for summary judgment [Doc. 17]. Plaintiff Joe D. Thompson

("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final

decision of the defendant Commissioner.

**I.**     **ALJ Findings**

ALJ James A. Sparks made the following findings:

1. The claimant meets the nondisability requirements for a period of
disability and disability insurance benefits set forth in Section 216(I)
of the Social Security Act and is insured for benefits through the date

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.
In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure and Title 42 of the
United States Code, Section 405(g), Michael J. Astrue is automatically substituted as the
defendant in this civil action.

of this decision.

2.  The claimant has not engaged in substantial gainful activity sine the alleged onset of disability.

3.  The claimant has no impairment or a combination of impairments considered "severe" based on the requirements in the Regulations[,] 20 CFR § 404.1520(b).  These include: psoriatic arthritis, Dupuytren's, and arthritis in the knee.

4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.  The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.  The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

7.  The claimant has the following residual functional capacity to perform light work, sitting for up to six hours in an eight-hour day, standing for up to six hours in an eight-hour day, walking for up to six hours in an eight-hour day, occasionally lifting twenty pounds and frequently lifting ten pounds; often climbing, balancing, stooping, kneeling, crouching, and crawling; avoiding vibrations and temperature extremes; avoiding humidity and wetness.  He has moderate pain with moderate loss of concentration.

8.  The claimant is unable to perform any of his past relevant work (20 CFR § 404.1545).

9.  The claimant is a younger individual (20 CFR § 404.1563).

10.  The claimant has a "high school education" (20 CFR § 404.1564).

11.  The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 404.1568).

12.  The claimant has the residual functional capacity to perform a

significant range of light work.

13.  Although the claimant's exertional limitations do not allow his [sic] to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision[-]making, there are a significant number of jobs in the national economy which he could perform.

14.  The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1820(f)).

[Tr. 16-17].

## II.    Disability Eligibility

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability.  See 42 U.S.C. § 1382(a).  "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §1382c(a)(3)(A).  [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  1142 U.S.C. § 1382c(a)(3)(B).  Disability is evaluated pursuant to a five-step analysis summarized as follows:

1.  If claimant is doing substantial gainful activity, he is not disabled.

2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. §404.1520).

Plaintiffs bear the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden

shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that

there is work available in the national economy that the claimant could perform. Her v. Comm'r of

Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

**III.    Standard of Review**

In reviewing the Commissioner's determination of whether an individual is disabled,

the Court is limited to evaluating whether substantial evidence supports the ALJ's conclusion and

whether the ALJ applied proper legal standards. Key v. Callahan, 109 F.3d 273 (6th Cir. 1997).

Substantial evidence is "[s]uch relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001)

(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is "[m]ore than a mere scintilla, but

less than a preponderance of evidence." Bruce v. Sec'y of Health & Human Servs., 52 F.3d 324,

1995 WL 154891, at *2 (6th Cir. Apr. 6, 1995) (per curiam). To determine whether substantial

evidence exists, the Court must review the administrative record as a whole. Cutlip v. Sec'y of

Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994). Reversal of the Commissioner's findings is not appropriate "merely because there exists in the record substantial evidence to support a different conclusion." Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001); see also Her, 203 F.3d at 389-90 (holding that "even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached"); Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986) (holding that, in a close case, unless the court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed). The Court may not review the case de novo, resolve conflicts in evidence, or decide questions of credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

**IV.**    **Arguments**

Plaintiff argues on appeal that substantial evidence did not support the decision of the ALJ, because the ALJ erred by: (A) finding Plaintiff capable of performing work that his rheumatologist and Kroger's Disability Plan found he was not capable of performing; (B) failing to find Plaintiff has an impairment which meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4; (C) improperly relying on a Residual Function Capacity ("RFC") evaluation; (D) considering Plaintiff's recreational activities in a disability evaluation; (E) disregarding Plaintiff's description of his pain; and (F) determining that Plaintiff's testimony was not fully credible and utilizing such determination to rely upon only a portion of the vocational expert's testimony. Additionally, Plaintiff submitted materials following the ALJ's denial of Plaintiff's claim, suggesting that (G) remand is appropriate to consider the new evidence. [Doc. 14]. Each of these arguments will be discussed below, in the order in which they were presented.

The Commissioner contends that substantial evidence supports the ALJ's decision.

The Commissioner argues that the ALJ correctly concluded that Plaintiff was not disabled because he could still perform a significant number of other jobs in the national economy given his vocational profile and his credible work-related limitations. Specifically, the Commissioner argues: the ALJ's decision is not contrary to that of Plaintiff's rheumatologist; whether another entity has found Plaintiff disabled is inapplicable to the present proceedings; Plaintiff did not properly carry his burden of proving that he has an impairment which meets or medically equals that of a listed impairment; the ALJ's reliance on the RFC evaluation was proper; recreational and daily activities may be considered when evaluating a disability claim; the ALJ did not disregard Plaintiff's allegations of pain; credibility determinations are within the sole province of the ALJ; the ALJ properly relied upon the vocational expert's testimony; and remand is inappropriate because the evidence submitted to the Appeals Council is neither new nor material. [Doc. 18].

Plaintiff replied to the Commissioner's response. Plaintiff countered the Commissioner's assertion that Plaintiff failed to carry his burden of proof regarding a listed impairment by attaching a portion of 20 C.F.R. Appendix 1, Subpart P, Regulation No. 4 and arguing that Plaintiff has an impairment severe enough to meet or medically equal that of a listed impairment. Additionally, Plaintiff provided further support to his previous arguments. [Doc. 19]. These arguments will be considered within the context of the primary arguments below.

### A.    *Determination Contrary to that of Rheumatologist and Disability Plan*

Plaintiff argues the ALJ erred by finding Plaintiff capable of performing work that both his rheumatologist and Kroger's Disability Plan determined he was incapable of performing. [Doc. 14]. The Commissioner argues substantial evidence exists for the ALJ to conclude that Plaintiff was not disabled. The Commissioner further argues that the ALJ's decision does not

contradict that of Plaintiff's rheumatologist and whether another entity found Plaintiff disabled has no bearing on the Commissioner's decision. [Doc. 18].

    1.    <u>Rheumatologist</u>

A treating physician is entitled to substantial deference. <u>Warner v. Comm'r of Soc. Sec.</u>, 375 F.3d 387, 390 (6th Cir. 2004). Dr. Wolfe is Plaintiff's treating rheumatologist. [Tr. 161-182]. Therefore, he treats one of Plaintiff's primary ailments: psoriatic arthritis. [<u>Id</u>.]. Contrary to Plaintiff's assertion, however, Dr. Wolfe never found Plaintiff incapable of performing the work the ALJ found Plaintiff could do.

The ALJ determined Plaintiff could perform light work. [Tr. 16]. Dr. Wolfe opined on Plaintiff's ability to work on January 10, 2003. [Tr. 174]. He indicated that Plaintiff could not return to work where he would be lifting forty to fifty pounds. [<u>Id</u>.]. However, Dr. Wolfe specifically stated that Plaintiff "[w]as not totally and permanently disabled from any employment, just from the lifting and standing responsibilities that he has. [<u>Id</u>.]. Additionally, Dr. Wolfe has consistently indicated that Plaintiff was "doing very well." [Tr. 171, 173, 183-84, 187.]. Moreover, Dr. Wolfe has noted that Plaintiff walks, takes care of his personal needs, lifts weights, rides a stationary bike, goes shopping at the mall, travels internationally, and participates in water sports. [Tr. 169, 173-74, 172, 176, 183, 187].

Light work involves "[l]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 220.132 (b). Thus, the ALJ's determination that Plaintiff is capable of light work is not contrary to Dr. Wolfe's assertion that Plaintiff cannot return to work where he would be required to lift forty to fifty pounds regularly. A review of the record and the reasons outlined below demonstrates that substantial evidence exists

to support the ALJ's conclusion that Plaintiff is capable of performing light work. Accordingly, the ALJ did not err in finding Plaintiff capable of light work.

### 2. Kroger's Disability Plan

The law clearly states:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504. Accordingly, whether Kroger found Plaintiff disabled is not a relevant factor for this determination. Thus, ALJ Sparks's failure to consider or give appropriate weight to the determination made by the Kroger's Disability Plan was not error. In fact the opposite is true as reliance upon Kroger's determination would have constituted error.

### B. Listed Impairment

Plaintiff argues the ALJ improperly proceeded to Step Four of the analysis by failing to find that Plaintiff has an impairment which meets or medically equals a listed impairment contained within 20 C.F.R. Appendix 1, Subpart P, Regulation No. 4. [Doc. 14]. The Commissioner correctly argues Plaintiff has failed to carry his burden of proof by failing to demonstrate that he has an impairment which meets or medically equals that of a listed impairment. [Doc. 18]. Plaintiff replied to this assertion by attaching a portion of Appendix 1, Subpart P, Regulation No. 4 and arguing that Plaintiff has an impairment severe enough to meet or medically equal that of the listed impairments. [Doc. 19].

Plaintiff improperly places the burden on the Commissioner by arguing, "The ALJ ha no basis to do so [proceed beyond Step Three] and did not demonstrate that Mr. Thompson's

condition was not severe enough to meet the impairments listed." [Doc. 19. p. 4]. As the Commissioner rightly noted, "'[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted) (alterations in original). This Court notes that Plaintiff cursorily challenged the ALJ's decision to proceed to Step Four of the disability analysis. Until Step Five, Plaintiff bears the burden of proof. Walters, 127 F.3d at 529. Thus, Plaintiff bears the burden of demonstrating that his impairment meets or equals that of a listed impairment. Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001); see also Lusk v. Comm'r of Soc. Sec., 106 Fed. Appx. 405, 2004 U.S. App. LEXIS 16469, at *16 (6th Cir. Aug. 6, 2004). Specifically, "a claimant must demonstrate that [his] impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder." Id. (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (A)). This Court finds that Plaintiff has neither carried his burden of proof nor properly argued his argument by raising the argument's substantive content in his Reply. L.R. 7.1 (c). Accordingly, Plaintiff's argument that he has an impairment which meets or medically equals that of a listed impairment fails.

As arguendo, this Court has reviewed the Appendix attached to Plaintiff's Reply. Plaintiff appears to be arguing that his impairment meets or medically equals that of an inflammatory, degenerative disease of the musculoskeletal system. To meet the listed impairment, a claimant must have a "loss of function." 20 C.F.R. Appendix 1, Subpart P, Regulation No. 4. § 1.00 (B)(1). One requirement for a "loss of function" is "[t]he inability to ambulate effectively on a sustained basis. . . ." Id. at § 1.00 (B)(2)(a). In his determination, ALJ Sparks specifically found that Plaintiff was capable of standing and/or walking for up to six hours in an eight-hour day. [Tr.

16, ¶ 7].  The record reflects substantial evidence for the ALJ's determination.  For example, Plaintiff's mother, Peggie Thompson, noted that Plaintiff can walk, without mobility aids or prostheses, and go shopping.  [Tr. 67, 69-70].  A Tennessee state agency physician assessed Plaintiff's residual functional capacity and determined Plaintiff could stand and/or walk for six hours in an eight hour work day.  [Tr. 156].  Moreover, Plaintiff informed his rheumatologist that he had no difficulty getting around and doing his usual activities.  [Tr. 171].  Accordingly, substantial evidence exists for the ALJ's determination that Plaintiff did not have an impairment which met or medically equaled that of a listed impairment.  ALJ Sparks properly proceeded to Step Four of the disability determination, and Plaintiff's argument, considered  arguendo herein, fails.

### C.    *Residual Functional Capacity Evaluation and Reliance Upon*

Plaintiff argues the ALJ erred by relying upon an allegedly incomplete RFC evaluation.  [Doc. 14].  The Commissioner argues the RFC assessor considered the entire existing medical record.  Accordingly, the ALJ's reliance upon the RFC evaluation was not misplaced.  [Doc. 18].

First, this Court notes that the plaintiff bears the burden of providing a complete record.  Foster, 279 F.3d at 357 (citing Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 214 (6th Cir. 1986)).  At the hearing, Plaintiff's counsel, Ms. Thompson, was specifically asked, "Ms. Thompson, you've looked through the file.  Do you have any objection to anything in the record. . .?" [Tr. 202].  Ms. Thompson replied that she did not.  [Id.].  To the extent Plaintiff claimed the assessment was improper, Plaintiff should have so stated at the administrative hearing.  Plaintiff, however, did not do so and instead has opted to argue this issue for the first time on appeal.

RFC is the most a claimant can do, despite his limitations.  20 C.F.R. § 404.1545 (a)(1).  In determining RFC, the Commissioner considers a claimant's ability to meet physical,

mental, sensory, and other requirements of employment. 20 C.F.R. § 404.1545 (a)(4). The crux of Plaintiff's assertion of error is that the RFC assessor only considered one of Plaintiff's impairments, degenerative osteoarthritis, and therefore, the ALJ's reliance upon the RFC evaluation was improper. The Commissioner argues and the record reflects that the ALJ reviewed the entire medical record. [Tr. 15]. Moreover, the state physician charged with the task of evaluating Plaintiff's RFC considered psoriatic arthritis and diabetes mellitus, in addition to degenerative osteoarthritis, in his findings. [Tr. 156]. Accordingly, the Plaintiff's argument that the assessment was inaccurate fails. Thus, the ALJ properly relied upon the RFC.

### D.    Inclusion of Recreational Activities in Determination

Plaintiff alleges the ALJ erred by taking into consideration Plaintiff's recreational activities when making a disability determination. [Doc. 14]. The Commissioner argues that an ALJ may consider everything in the record, including recreational and daily activities, when evaluating a plaintiff's claim of disability. [Doc. 18].

The rules require an ALJ to "always consider" all of the relevant evidence. 20 C.F.R. § 404.1527 (b)-(c). A claimant's daily activities are a relevant factor in determining whether a person is disabled. 20 C.F.R. § 404.1529 (c)(3)(I); Felisky v. Bowen, 35 F.3d 1027, 1039 (6th Cir. 1994). Accordingly, the ALJ's inclusion of Plaintiff's recreational activities while determining whether Plaintiff was disabled was not error. See, e.g., Leffel v. Comm'r of Soc. Sec., 30 Fed. Appx. 459, 2002 WL 257372, at *2 (6th Cir. Feb. 20, 2002) (affirming a decision based partly on claimant's ability to perform household chores, drive a vehicle, engage in limited recreational activity, wash dishes, do laundry, vacuum, and dust); Davis v. Sec'y of Health & Human Servs., 66 F.3d 325, 1995 WL 544081, at *2 (6th Cir. Sept. 12, 1995) (per curiam) (citing to Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 (6th Cir. 1986) (considering shopping and housework

when evaluating a claimant's allegations of pain)).

###### E.    *Plaintiff's Allegations of Pain*

Plaintiff argues that the ALJ improperly disregarded Plaintiff's allegations of pain. [Doc. 14].  The Commissioner argues that the ALJ did not disregard Plaintiff's allegations of pain, but rather considered each allegation in light of Plaintiff's credibility.  [Doc. 18].

Pain toleration is highly individualized; disability determinations based on pain depend largely on the claimant's credibility.  Bowman v. Comm'r of Soc. Sec., 132 F.3d 32, 1997 WL 764419, at *3 (6th Cir. Nov. 26, 1997) (per curiam) (citing Villarreal v. Sec'y of Health & Human Servs., 818 F.2d 461, 463 (6th Cir. 1987)). The Court should look to whether any physician has diagnosed the claimant's pain as severe or disabling to determine whether allegations of pain are credible.  Siterlet v. Sec'y of Health & Human Servs., 823 F.2d 918, 921 (6th Cir. 1987) (per curiam).  Therefore, this Court must review the doctors' assessments of Plaintiff's pain to determine whether the ALJ's findings regarding pain are supported by substantial evidence.

Dr. John Craig Rylands is Plaintiff's general, treating physician.  [Tr. 112-140].  On August 12, 2002, Plaintiff was still working and complained that his feet were really hurting.  [Tr. 121].  Upon examination, Dr. Rylands concluded that Plaintiff's wrists were a "little painful" and his ankles "hurt a bit."  [Id.].  One week later, Plaintiff presented and complained of pain and an inability to work. [Tr. 119].  Dr. Rylands gave Plaintiff a note to be off work from August 19, 2007 to September 1, 2002, but never opined that Plaintiff was generally unable to return to work.  [Tr. 119-20].  On November 10, 2003, Plaintiff reported to Dr. Rylands that he was "generally feeling well."  [Tr. 117].

Plaintiff's treating rheumatologist is Dr. Wolfe.  [Tr. 161-182].  On July 8, 2003, Plaintiff informed Dr. Wolfe that he was "doing fairly well."  [Tr. 172].  Dr. Wolfe noted Plaintiff

was having no trouble with his skin and some achiness in the shoulders and ankles. [Id.] Dr. Wolfe's notes reflect, "[i]t is very difficult to tell exactly what he was trying for, since he has improved so much. He states he is 100% better than he was last year at this time, though he does think he has improved much since December." [Id.].

On September 18, 2003, Dr. Wolfe's notes reflect that Plaintiff "[h]as no difficulty in getting up, down, about, or around and does his usual activities." [Tr. 171]. On December 18, 2003, Plaintiff presented with psoriatic arthritis. [Tr. 170]. Dr. Wolfe's notes reflect, "He states that he is doing well. He feels his pain level on a scale of zero to ten is a six. He questions that and thinks that it is probably closer to four." [Id.] The doctor concluded the examination by encouraging Plaintiff to exercise. [Id.].

On April 12, 2004, Plaintiff presented with psoriatic arthritis. [Tr. 169]. He self-reported that he was "doing fair" and that his pain was a five on a scale of zero to ten. [Id.]. He requested a handicap sticker for his car because he tired after walking the mall for a couple of hours and had trouble reaching his car. [Id.] Dr. Wolfe found that Plaintiff was having no difficulty with psoriatic arthritis at this point but was bothered by Dupuytren's in his hands and feet. [Id.].

On March 21, 2005, Plaintiff informed Dr. Wolfe that he was doing "fairly well." [Tr. 184]. The doctor's notes state:

> He is able to do what he needs to do to take care of himself and overall is quite functional. . . . He states that he is exercising regularly, doing some stretching. His major complaint is pain in his left hip from time to time. It is sharp and stabbing. He states that is bothers him but exercise seemed to help.

[Id.]. On July 8, 2005, Plaintiff reported to Dr. Wolfe that he was doing very well. [Tr. 183]. The doctor's notes reflect that Plaintiff, "[r]eally has no complaints at all. Is [sic] feeling very good and has been fairly active." [Id.]

On January 5, 2004, Plaintiff visited Dr. Joseph C. DeFiore, Jr., on a referral from his rheumatologist, Dr. Wolfe. [Tr. 141]. Plaintiff presented complaining of hand problems. [Id.] He stated that his symptoms were "mild[,] 2 out of 10." [Id.] Dr. DeFiore determined that Plaintiff suffered from Dupuytren's syndrome, but that nothing needed to be done at this point because the Plaintiff had yet to develop a contracture. [Id.] Therefore, Dr. DeFiore determined Plaintiff's symptoms were not severe enough to necessitate aggressive treatment.

The Sixth Circuit has established a two step process for evaluating a claimant's assertions of pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Felisky, 35 F.3d at 1038-39. This two step process only applies to claims of disabling pain supported by objective medical evidence. Subjective complaints of pain are subject to a different standard, as "subjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'" Buxton, 246 F.3d at 773 (quoting 42 U.S.C. § 423(d)(5)(A)); see also Davis, 66 F.3d 325, 1995 WL 544081, at *1 (citing Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 713 (6th Cir. 1988) (holding that subjective allegations of disabling pain are not sufficient to support a claim for benefits)).

As discussed above, though medical evidence exists to substantiate Plaintiff's claims of pain, no doctor found the pain to be disabling or severe. Accordingly, Plaintiff's allegations of severe pain are subjective. Credibility determinations regarding subjective complaints of pain rest with the ALJ. Siterlet, 823 F.2d at 920; see also Winston v. Comm'r of Soc. Sec., 64 F.3d 664, 1995 WL 478482, at *2 (6th Cir. Aug. 9,1995) (relying on Siterlet). As such, this Court may not decide

questions of credibility.  <u>Gaffney v. Sec'y of Health & Human Servs.</u>, 825 F.2d 98, 100 (6th Cir.

1987).  In his Evidentiary Support Statement, ALJ Sparks detailed what he considered to arrive at

his determination:

> In August of 2002, the claimant sought treatment for pain and
> swelling in his hands and feet.  He sought treatment with a
> rheumatologist (Exhibits 2F, 7F, 6F).  Grip strength was incomplete
> in October of 2002.  However, he responded to medication
> adjustments. . . .  The claimant was giving "absolutely glowing
> reports of his improvement from the Enbrel" in January of 2003.  He
> reported being able to perform all self care and riding a rubber raft
> around the lake.  The treating physician provided a statement at his
> request that he could not go back to lifting and stacking boxes of 40
> to 50 pounds.  Dr. Wolfe quite clearly stated that the claimant "is not
> permanently disabled from any employment, just from the lifting and
> standing responsibilities that he has."  In May of 2003, the claimant
> was pleased with his progress.  He was lifting weights and riding a
> stationary bike.  He complained of foot pain.  Wrists were slightly
> tender on exam.  In July of 2003, he was "doing fairly well."  Some
> tenderness was noted in the hands, but range of motion was good.  In
> September of 2003, he was "doing very well" with less swelling,
> stiffness, and pain.  The claimant was doing well with pain of a 4 on
> a scale of 1 to 10 in December of 2003. . . .  In April of 2004, the
> claimant was "doing fair" with pain of 5 out of 10. . . .  In August of
> 2004, the claimant was doing "very well.". . .  The claimant . . .
> recently made a trip to Paris without much difficulty with his joints.
> In November of 2004, the claimant was doing reasonably well,
> "feeling quite well and very comfortable.". . .
>
> Treatment notes reveal that the claimant was doing "very well" in
> March of 2005 with "no complaints at all."  He was feeling very good
> and had been fairly active.  On examination, he did not have any
> swelling or tenderness. . . .  He had good range of motion in the
> hands, wrists, elbows, and shoulders.
> 　　　　. . . . .
> The claimant's allegations regarding his limitations are not totally
> credible.  He clearly has a condition which would impose significant
> limitations but for treatment.  He has responded well to treatment.
> His treating physician has never indicated that he could not work.  He
> simply instructed the claimant to avoid his old job at medium
> exertion.  His daily activities and recreational activities are consistent
> with light work.

[Tr. 13-14].  In the instant case, the record contains evidence sufficient to support the ALJ's decision

to discount Plaintiff's testimony, including Plaintiff's claims of disabling pain. Examples of items which tend to show that Plaintiff's testimony might not be credible include: Plaintiff traveled to Paris [Tr. 187]; Plaintiff goes shopping for a couple of hours at a time [Tr. 169, 207]; Plaintiff drives [Tr. 203]; Plaintiff went tubing behind a hovercraft [Tr. 183, 219-20]; Plaintiff works out, including curling twenty pounds, riding the stationary bike, walking, water aerobics, and doing lower extremity exercises [Tr. 68, 169, 172-73, 184, 205, 219-20]; Plaintiff runs errands as needed [Tr. 74]; Plaintiff has a foreign exchange student living with him and his wife [Tr. 207]; Plaintiff mows the church's lawn [Tr. 208]; Plaintiff cooks, does laundry, vacuums,[2] and completes chores around the house [Tr. 64-66, 74, 207]; and Plaintiff goes to church and visits friends [Tr. 68, 208]. All of these pieces of evidence, taken together, more than satisfy the substantial evidence standard; therefore, the ALJ did not err in discounting plaintiff's claim of suffering from disabling pain.

### F.     *Credibility Determinations and Vocational Experts*

Plaintiff alleges the ALJ erred by discounting Plaintiff's credibility and consequently relying upon only a portion of the vocational expert's testimony. [Doc. 14]. The Commissioner argues the ALJ properly relied upon the vocational expert's testimony and that credibility determinations are within the purview of the ALJ. [Doc. 18].

The ALJ determined that claimant has not engaged in substantial gainful activity since filing for benefits on December 18, 2003, and that claimant's impairment is not severe as determined by Appendix 1, Subpart P, Regulation No. 4. [Tr. 11-13]. Additionally, the ALJ determined that Plaintiff was not capable of resuming his past relevant work - produce and night clerk. [Tr. 12]. Accordingly, the ALJ's determination was based on finding that Plaintiff was not

---

[2]At the administrative hearing, Plaintiff stated that he does not vacuum. [Tr. 208]. His mother had previously stated that he vacuums. [Tr. 66].

disabled at Step Five, which provides that, "even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled." Walters, 127 F.3d at 529 (citing 20 C.F.R. §404.1520).

At Step Five of a disability inquiry, the Commissioner bears the burden of proving that other jobs are available for the claimant within the national economy if the claimant does not have a listed impairment and cannot do his last regular work. Foreman v. Comm'r of Soc. Sec., 122 F.3d 24, 25 (8th Cir. 1997); see also Winston, 1995 WL 478482, at *3 (holding that if the claimant cannot perform past relevant work, then the burden shifts to the Commission to show that other jobs are available despite the claimant's impairments) (relying on Born v. Sec'y of Health & Human Serv., 923 F.2d 1168, 1173 (6th Cir. 1990)). If the claimant cannot perform past relevant work, the Commissioner must prove that the claimant can perform other work, based on all relevant factors, including age, education, previous work experience, and RFC. Bruce, 1995 WL 154891, at *1. To determine whether a claimant can perform other work, an ALJ may rely on vocational testimony or the Medical Vocational Guidelines ( "grids") provided in the regulations. Id.; 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.28.

In the instant case, the ALJ used the grids as a framework and refined his determination with the assistance of a vocational expert. [Tr. 15]. As to the Plaintiff's contention that the ALJ improperly accessed Plaintiff's credibility, the law states, "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters, 127 F.3d at 531. Accordingly, this Court may not decide questions of credibility. Gaffney, 825 F.2d at 100.

Specifically, the ALJ is tasked with determining what restrictions a claimant actually has. Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 247 (6th Cir. 1987). A vocational expert only identifies what jobs are available to a person with a certain set of restrictions. Id. Katy Bradford, the vocational expert, testified to the following at the administrative hearing:

> Q:    You've reviewed the Claimant's exhibit file and been here for the testimony today?
>
> A:    Yes, sir.
>
> Q:    I'd like for you to please assume a hypothetical 40-year-old person as of onset, with one year of college, work experience as is shown in the record and been described. This person can walk, sit, and stand six hours total each in an eight hour day with normal breaks, and occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds. This person can occasionally climb, balance, stoop, knell, crouch, and crawl. No humidity or wetness. This person suffers moderate pain with moderate loss of concentration. Could that person return to any of the prior work of record?
>
> A:    No, sir.
>
> Q:    Could that person perform any jobs in significant numbers in the region with the state limitations?
>
> A:    Yes, sir.
>
> Q:    Could you give examples, please?
>
> A:    Yes, at the light unskilled levels, such a person could perform the duties of parking lot attendant. With those restrictions, there are approximately 500 positions in Tennessee, and 42,250 in the United States. There would also be ticket taker.
>
> Q:    The what?
>
> A.    Ticket taker, with 500 positions in the region, and 27,000 in the United States that such a person could perform. Additionally, there would be the occupation of cashier with 1,500 positions in the region, and 77,000 in the United States that would allow for those restrictions.
>
> Q:    Are these examples or [an] exhaustive list?
>
> A:    Those would just be examples, Your Honor.
>
> Q:    You've heard the Claimant's testimony. If his testimony were given full credibility, would he be able to perform any of the above listed jobs?
>
> A:    No, sir.
>
> Q:    Would he be able to perform any jobs in significant numbers in the region?
>
> A:    No, Your Honor.

[Tr. 221-22.]

This scenario is identical to that found in <u>Bowman</u>, where the Court held, "the vocational expert, Dr. Brooks, initially testified that assuming Bowman's testimony was credible, Bowman could do no work. Because the ALJ discounted Bowman's credibility, however, he did not rely on this portion of Dr. Brook's testimony." <u>Bowman</u>, 132 F.3d 32, 1997 WL 764419, at *4. In <u>Bowman</u>, the ALJ then proceeded to ask the ALJ a question premised upon the limitations the ALJ found credible. <u>Id.</u> The vocational expert opined that jobs existed for someone with the latter hypothetical's limitations. <u>Id.</u> Accordingly, the ALJ found, the District Court held, and the Sixth Circuit affirmed that the claimant was not disabled. <u>Id</u>. at 5. "A hypothetical question need only include those limitations which the ALJ accepts as credible." <u>Id</u>.

<u>Bowman</u> and the current case are synonymous. In both cases the ALJ posed one hypothetical question to the vocational expert including all limitations accessed by the claimant and a second hypothetical question including only those limitations the ALJ deemed credible. Relying on only a portion of the vocational expert's testimony is permissible. The ALJ did not commit error by posing more than one question, and subsequently relying upon only one question's answer.

Ultimately, the ALJ is tasked with deciding whether the claimant is disabled. <u>Ahleman v. Comm'r of Soc. Sec.</u>, 134 F.3d 370, 1998 WL 30799, at *2 (6th Cir. Jan. 23, 1998) (citing <u>Walker v. Sec'y of Health & Human Servs.</u>, 980 F.2d 1066, 1070 (6th Cir. 1992)). In this case, ALJ Sparks determined the Plaintiff was not disabled. [Tr. 11, 15]. This Court finds substantial evidence exists to support the ALJ's determination and that no error was committed by the ALJ in accessing Plaintiff's credibility or utilizing only a portion of the vocational expert's testimony.

**G.    *Evidence Submitted to the Appeals Council***

19

Plaintiff submitted materials to the Appeals Council following the issuance of the ALJ's decision. [Tr. 194-196]. These materials include a letter from Dr. Wolfe, dated December 16, 2005, opining that psoriatic arthritis is misunderstood by the Commissioner and the ALJ. [Tr. 194-95]. Ms. Thompson, acting as her husband's attorney, also sent a letter. [Tr. 196]. In her letter, Ms. Thompson stated that the ALJ "[d]emonstrated a compete lack of understanding" of psoriatic arthritis and its effect on the human body. [Id.]. Though Plaintiff did not specifically argue for a remand based upon this evidence, the Commissioner argued remand would be inappropriate because the evidence submitted to the Appeals Council is neither new nor material. [Doc. 18].

"[E]vidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." Foster, 279 F.3d at 357 (6th Cir. 2001) (citing Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996)). However, the reviewing court may remand the case for further administrative proceedings if the claimant shows that the evidence submitted to the Appeals Council is new and material and that good cause exists for failing to present it earlier. Id. Evidence is "material" only if "[t]here is 'a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence.'" Id. (quoting Sizemore, 865 F.2d at 711).

This Court finds that the evidence submitted [Tr. 194-196] is neither new nor material, as defined herein. Additionally, good cause has not been shown for failing to present it in a timely fashion. Further, there is not a reasonable probability that this evidence would alter the decision reached by the Commissioner. Accordingly, a remand based upon this evidence would be inappropriate. To the extent Plaintiff has argued for a remand due to new and material evidence, Plaintiff's argument fails.

## V.       Conclusion

For the reasons stated herein, it is hereby **RECOMMENDED**[3] that Plaintiff's motion

for summary judgment [Doc. 13] be **DENIED** and that Defendant's motion for summary judgment

[Doc. 17] be **GRANTED**.

Respectfully submitted,


_____s/ C. Clifford Shirley, Jr._____
United States Magistrate Judge

---

[3]Any objections to this Report and Recommendation must be served and filed within ten
(10) days after service of a copy of this recommended disposition on the objecting party.  Such
objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure.
Failure to file objections within the time specified waives the right to appeal the District Court's
order.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985).  The district court need not provide
de novo review where objections to this report and recommendation are frivolous, conclusive or
general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved
for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).